IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

RENEE SCHROEDER,

    Plaintiff,

v.

CALEB GILBERT, in his
individual capacity,

    Defendant.

CIVIL ACTION FILE NO.:
4:14-CV-0130-HLM

## ORDER

This case is before the Court on Defendant's Motion for

Judgment on the Pleadings [15].

## I.   Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure

provides for motions for judgment on the pleadings.  Fed. R.

Civ. P. 12(c).  "'Judgment on the pleadings is proper when

no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts.'" Cunningham v. Dist. Attorney's Office for Escambia County, 592 F.3d 1237, 1255 (11th Cir. 2010) (quoting Andrx Pharm., Inc. v. Elan Corp., 421 F.3d 1227, 1232-33 (11th Cir. 2005)).  When considering a motion for judgment on the pleadings, the Court accepts all of the facts alleged in the complaint as true and views those facts in the light most favorable to the nonmoving party.  Id.

2

## II.   Background

### A.   Plaintiff's Allegations

#### 1.   The Parties

Plaintiff resides in Pennsylvania.   (Compl. (Docket Entry No. 1) ¶ 1.)   Defendant is a POST-certified police officer employed by the City of Dunwoody Police Department.  (Id. ¶ 2.)

#### 2.   Events Giving Rise to this Lawsuit

On August 2, 2013, Plaintiff was the front-seat passenger in a car driven by her friend, Mr. Beazer. (Compl. ¶ 6.)  Another individual rode in the rear seat of the car.  (Id.)

Defendant was on routine traffic patrol and received a report that a car matching the description of Plaintiff's car

3

failed to maintain its lane.  (Compl. ¶ 7.)  After seeing

Plaintiff's car, Defendant initiated a traffic stop.  (Id. ¶ 8.)

During the traffic stop, Defendant ordered the driver to

exit the car.  (Compl. ¶ 9.) According to Plaintiff, Defendant

interrogated the driver about his relationship with the

passengers in the car.  (Id.) After the driver exited the car,

Defendant indicated that he planned to search the car for

contraband.  (Id. ¶ 10.)

Defendant then ordered the rear seat passenger to exit

the car.  (Compl. ¶ 11.)  Defendant began searching the

backseat.  (Id.)

Next, Defendant opened the car's front passenger door

and ordered Plaintiff to exit the car.  (Compl. ¶ 12.)  As

Plaintiff exited the car, she asked Defendant if she could

4

take her purse with her.  (<u>Id.</u> ¶ 13.)  Defendant stated that he needed to search the purse, and Plaintiff handed her purse to Defendant.  (<u>Id.</u>)

Defendant searched the purse and found a prescription pill bottle for Clonazopam that contained seven pills. (Compl. ¶ 14.)  The label on the bottle bore the name "William Schroeder."  (<u>Id.</u>)  Plaintiff identified "William Schroeder" as her husband. (<u>Id.</u> ¶ 15.) Under Georgia law, Clonozapam is a schedule IV controlled substance.  (<u>Id.</u> ¶ 24.)

Defendant arrested Plaintiff and charged her with violating the Georgia Controlled Substances Act, O.C.G.A. § 16-13-30.  (Compl. ¶ 16.)  According to Plaintiff, her possession of her husband's prescription pill bottle provided

5

the sole basis for Defendant's decision to arrest her.  (Id. ¶ 17.)

Plaintiff alleges that, under O.C.G.A. § 16-13-75(a), possession of a controlled substance prescribed to another person is not illegal if the drugs are in the original container in which they were dispensed by the pharmacist. (Compl. ¶ 25.)  Plaintiff contends that the medication in her purse belonged to her husband, the medication was in its original container, and the original label was affixed to the container. (Id. ¶ 26.)  Plaintiff alleges that in the absence of any other evidence of wrongdoing, her conduct was legal under O.C.G.A. § 16-13-75(a).  (Id. ¶ 27.)  According to Plaintiff, no evidence indicated that she had taken the medication, that she had given the medication to a third party, or that

6

she had removed the medication from its original container. (Id. ¶ 28.) Plaintiff alleges that Defendant had no evidence or indication that Plaintiff had planned or conspired to engage in any illegal activity related to the possession of the medication. (Id. ¶ 29.)

After Plaintiff's arrest, Defendant released the driver of the car with a verbal warning. (Compl. ¶ 18.) Plaintiff was incarcerated in the DeKalb County Jail after her arrest. (Id. ¶ 19.) According to Plaintiff, her mug shot appeared on the Internet, which caused harm to her reputation. (Id. ¶ 20.)

The DeKalb County District Attorney ultimately declined to prosecute Plaintiff's criminal case. (Compl. ¶ 21.) Plaintiff alleges that she has not been able to secure

7

employment as a teacher after her arrest, and notes that the expungement of her record does not prohibit potential employers from seeing her arrest record. (Id. ¶ 22.) According to Plaintiff, she suffered shock, trauma, and mental anguish after her incarceration. (Id. ¶ 23.)

## B.   Procedural Background

On June 3, 2014, Plaintiff filed this lawsuit. (Docket Entry No. 1.) Plaintiff asserted a false arrest claim under 42 U.S.C. § 1983. (Compl. ¶¶ 24-30.)

On September 17, 2014, Defendant filed his Motion for Judgment on the Pleadings. (Docket Entry No. 15.) Defendant argued that qualified immunity protected him from Plaintiff's claim. (See generally id.) The briefing process for the Motion for Judgment on the Pleadings is

AO 72A
(Rev.8/8
2)

complete, and the Court finds that the matter is ripe for resolution.

## III. Discussion

Defendant asserts the defense of qualified immunity with respect to Plaintiff's § 1983 false arrest claim asserted against him. (Mot. J. Pleadings (Docket Entry No. 15) at 3-6.) The Court first sets forth the general standard governing qualified immunity, and then applies that standard to Plaintiff's claim.

### A. Qualified Immunity: In General

Qualified immunity protects government officials performing discretionary functions from suits for damages brought against them in their individual capacities. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1282 (11th Cir. 2008).

9

The Eleventh Circuit applies a two-part analysis to determine whether a defendant is entitled to qualified immunity. Crawford v. Carroll, 529 F.3d 961, 977 (11th Cir. 2008).

Under the qualified immunity analysis used in this Circuit, the defendant first must prove that the allegedly unconstitutional conduct occurred while the defendant official was acting within the scope of the official's discretionary authority. Al-Amin v. Smith, 511 F.3d 1317, 1324 (11th Cir. 2008). To determine whether the defendant acted within his discretionary authority, the Court asks "whether the [defendant] was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [the defendant's] power to

10

AO 72A
(Rev.8/8
2)

utilize." <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004).  In making this determination, the Court does not inquire "'whether it was within the defendant's authority to commit the allegedly illegal act.'" <u>Id.</u> at 1266 (quoting <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d 1271, 1282 (11th Cir. 1998)).  Instead, the Court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." <u>Id.</u>   Once a defendant shows that he or she acted within his or her discretionary authority, the burden shifts to the plaintiff to demonstrate that (1) the defendant's conduct violated the   plaintiff's

11

constitutional right and (2) that the constitutional right violated was "clearly established." Al-Amin, 511 F.3d at 1324. If the plaintiff fails to make either of those showings, the defendant is entitled to qualified immunity. See Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1295 (11th Cir. 2003) ("Without a constitutional violation, there can be no violation of a clearly established right."). The Supreme Court has observed that courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

12

AO 72A

(Rev.8/8
2)

For a constitutional right to be clearly established, the contours of that right must be clear enough that reasonable officials would understand that what they are doing violates that right. Rioux, 520 F.3d at 1282. To make this showing, a plaintiff need not show that the official's "conduct specifically has been held unlawful"; instead, the plaintiff simply must demonstrate that, in light of pre-existing law, the unlawfulness of the official's conduct was apparent. Bates v. Harvey, 518 F.3d 1233, 1248 (11th Cir. 2008). In determining whether the unlawfulness of the official's act was apparent, the Court must ask "whether the state of the law at the time [of the official's action] gave [the official] 'fair warning' that [his or her] conduct was unconstitutional." Id. (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

13

The Eleventh Circuit has explained that a defendant may have received "fair warning" in one of three ways. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002). "First, conduct may be clearly established as illegal through explicit statutory or constitutional statements." Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1208-09 (11th Cir. 2007) (citing Vinyard, 311 F.3d at 1350).[1] "Second, certain 'authoritative judicial decision[s]' may establish broad principles of law that are clearly applicable in a variety of factual contexts going beyond the particular circumstances of the decision that establishes the principle." Id. at 1209 (alteration in original) (citing Vinyard, 311 F.3d at 1351).

---

[1]This exception, however, "is a narrow one" and applies "only when the conduct in question is so egregious that the government actor must be aware that he [or she] is acting illegally." Thomas ex rel. Thomas v. Roberts, 323 F.3d 950, 955 (11th Cir. 2003).

AO 72A

(Rev.8/8

"Third, and most common, is the situation where case law previously elucidated in materially similar factual circumstances clearly establishes that the conduct is unlawful." Id. (citing Vinyard, 311 F.3d at 1351-52).

## B.   Application to this Case

There is no question that Defendant was acting within his discretionary authority as a police officer when he stopped the car in which Plaintiff was riding and when he arrested Plaintiff.   The Court next determines whether Defendant violated clearly established law.

As an initial matter, "[t]here is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment." Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997).  Qualified

15

immunity, however, will protect Defendant as to Plaintiff's §
1983 false arrest claim if <u>arguable</u> probable cause existed
for Defendant to arrest Plaintiff.   <u>Storck v. City of Coral
Springs</u>, 354 F.3d 1307, 1315 (11th Cir. 2003). "'Arguable
probable cause exists when an officer reasonably could
have believed that probable cause existed, in light of the
information the officer possessed.'" Id. (quoting <u>Durruthy v.
Pastor</u>, 351 F.3d 1080, 1092 (11th Cir. 1997)) (internal
quotation marks omitted). "'Even law enforcement officials
who reasonably but mistakenly conclude that probable
cause is present are entitled to immunity.'" <u>Wood v. Kesler</u>,
323 F.3d 872, 878 (11th Cir. 2003) (quoting <u>Hunter v.
Bryant</u>, 502 U.S. 224, 227 (1991)). Moreover, qualified
immunity applies so long as an officer "has 'arguable

16

probable cause to arrest for any offense.'" <u>Merenda v. Tabor</u>, No. 12-12562, 2013 WL 396122, at *2 (11th Cir. Feb. 1, 2013) (quoting <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1257 (11th Cir. 2010)).

When determining whether probable cause exists to support an arrest, the Court considers whether the arresting officer's actions were "objectively reasonable based on the totality of the circumstances.'" <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1226 (11th Cir. 2004) (citing <u>Rankin v. Evans</u>, 133 F.3d 1425, 1435 (11th Cir. 1998)). "'This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect

17

has committed, is committing, or is about to commit an offense.'" Id. (quoting Rankin, 133 F.3d at 1435 (internal quotation marks omitted)). "'Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction.'" Wood, 323 F.3d at 878 (quoting Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (alteration in original)). The officer's subjective intent is immaterial, and the Court instead must consider the facts objectively. Williams v. City of Homestead, Fla., 206 F. App'x 886, 888 (11th Cir. 2006) (per curiam).

Viewing the allegations of the Complaint in the light most favorable to Plaintiff, as the Court must, a genuine

18

dispute remains as to whether Defendant had arguable probable cause to arrest Plaintiff. Defendant discovered a prescription pill bottle containing Clonazopam in Plaintiff's purse that was labeled with the name "William Schroeder." (Compl. ¶ 14.) Plaintiff informed Defendant that William Schroeder was her husband. (Id. ¶ 15.) Clonozopam is a schedule IV controlled substance under Georgia law. (Id. ¶ 24.) Plaintiff further alleged that: (1) the medication was in its original container, with the original label affixed to the container (id. ¶¶ 26, 28); (2) no evidence indicated that Plaintiff had taken the medication or that she had given the medication to anyone else (id. ¶ 28); and (3) Defendant had no evidence or indication that Plaintiff planned to engage in

19

any illegal activity related to the possession of the medication (id. ¶ 29).

O.C.G.A. § 16-13-30(a) provides that "[e]xcept as authorized by this article, it is unlawful for any person to purchase, possess, or have under his or her control any controlled substance." O.C.G.A. § 16-13-30(a). O.C.G.A. § 16-13-30(g), in turn, states, in relevant part: "Except as provided in subsection (l) of this Code section, any person who violates subsection (a) of this Code section with respect to a controlled substance in Schedule III, IV, or V shall be guilty of a felony." O.C.G.A. § 16-13-30(g).[2] Finally, O.C.G.A. § 16-13-75(a) provides: "Possession and control of controlled substances or dangerous drugs by anyone

_____

[2]O.C.G.A. § 16-13-30(l) relates to flunitrazepam, a Schedule IV controlled substance.  O.C.G.A. § 16-13-30(l).

AO 72A

(Rev.8/8

other than the individuals specified in Code Section 16-13-35 or 16-13-72 shall be legal only if such drugs are in the original container in which they were dispensed by the pharmacist or the practitioner of the healing arts and are labeled according to Code Section 26-3-8." O.C.G.A. § 16-13-75(a).

Reading those statutes together and viewing Plaintiff's allegations in the light most favorable to Plaintiff, a genuine dispute remains as to whether Defendant had arguable probable cause to arrest Plaintiff for violating the Georgia Controlled Substances Act. Although Plaintiff possessed Clonozopam, a Schedule IV controlled substance, in a pill bottle that did not bear Plaintiff's name, the medication was in its original container, bearing its original label, and

21

Plaintiff informed Defendant that the medication belonged to her husband.   Further, Plaintiff has alleged that no evidence indicated that she had taken the medication or given it to anyone else, or that she planned or conspired to engage in any illegal activity related to the possession of the medication.   (Compl.   ¶¶   27-28.)   Under   those circumstances, a reasonable officer in Defendant's position would not have had arguable probable cause to place

22

Plaintiff under arrest for possession of a controlled substance.[3]

In sum, viewing Plaintiff's allegations in the light most favorable to Plaintiff, Defendant lacked arguable probable cause to arrest Plaintiff for possession of a controlled substance. Arresting an individual without probable cause to do so violates clearly established law. Under those circumstances, the Court cannot conclude, at least at this stage of the proceedings, that Defendant is entitled to

---

[3]The Georgia Court of Appeals has concluded that insufficient evidence existed to authorize a conviction for unlawful possession of tetracycline where the evidence in the record showed that several tetracycline pills were found in the defendant's home, in a prescription bottle bearing the name of his brother. Thackston v. State, 178 Ga. App. 408, 409, 343 S.E.2d 171, 172 (1986). In Thackston, "[t]he defendant's brother testified without contradiction that the pills were his and that they had been prescribed for him." Id.

23

qualified immunity.    The Court consequently denies Defendant's Motion for Judgment on the Pleadings.

## IV.  Conclusion

ACCORDINGLY,  the  Court  **DENIES**  Defendant's Motion for Judgment on the Pleadings [15].

IT IS SO ORDERED, this the 17 day of October, 2014.

_____
UNITED STATES DISTRICT JUDGE

24